THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO.1:98-cr-00155-MR-WCM-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| ARANDER MATTHEW HUGHES, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 89] and the Defendant's "Motion to File Document Under Seal" [Doc. 91].

**I.     BACKGROUND**

Between July 1997 and April 1998, 20-year-old Arander Matthew Hughes, Jr., committed the armed robbery of a grocery store, a hotel, a Pizza Hut, and two banks in Asheville, North Carolina. [Doc. 80: PSR at ¶¶ 7, 9-15]. Hughes carried a double-barrel shotgun during all five robberies; before the bank robberies, Hughes sawed off the barrel of the shotgun making it less than 18 inches in length and sawed off the stock, creating a pistol grip. [Id. at ¶ 7]. During the first robbery of an Ingles grocery store, Hughes fired a shot from the shotgun upon entering the store and approached the store

manager at the front desk. [Id. at ¶ 9]. Hughes waved the shotgun at the manager, the clerk, and customers while stealing money from the manager and from a check-out clerk who had been checking out a customer. [Id.]. During the second robbery, Hughes carried the shotgun into a Holiday Inn Express and threatened to shoot the hotel clerk in the foot, as the clerk was opening safety deposit boxes and emptying out his pockets. [Id. at ¶ 10]. As Hughes walked out of the hotel, a hotel guest came out of his room and walked down some stairs toward the lobby. [Id.]. Hughes turned around and fired a shot in the direction of the guest as he was fleeing. [Id.]. Fortunately, the guest was not injured. [Id.].

Hughes next robbed a Pizza Hut. During this third robbery, Hughes carried the shotgun and pointed it at a Pizza Hut employee. [Id. at ¶ 11]. Hughes was accompanied by an accomplice carrying a .22 caliber rifle. [Id.]. After an employee handed Hughes the night deposit, Hughes grabbed the employee by the arm and pushed him, ordering him to open the cash register and give him the money inside. [Id.].

Hughes's fourth robbery was of a Centura Bank. [Id. at ¶ 13]. During that robbery, he pointed the shotgun at everyone in the bank, while ordering the tellers to fill a backpack with cash. [Id.]. Similarly, during Hughes' fifth

robbery, of a NationsBank, Hughes pointed his shotgun at tellers, ordering them to put money into his book bag. [Id. at ¶ 14].

A federal grand jury indicted Hughes and charged him with three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951; two counts of bank robbery, in violation of 18 U.S.C. § 2113(a); two counts of possessing a short-barreled shotgun, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(1); and five counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). [Doc. 1: Indictment]. Hughes proceeded to trial, and a jury found him guilty of all 12 offenses. [Doc. 26: Jury Verdict].

Prior to sentencing, this Court's probation office submitted a presentence report which calculated a total offense level of 27 for the robbery and short-barreled shotgun offenses. [Doc. 80: PSR at ¶ 80]. When this offense level was combined with a criminal history category of IV, the Sentencing Guidelines called for a sentence of between 100 and 125 months in prison for the robbery and short-barreled firearm offenses. [Id. at ¶ 115]. In addition, Hughes faced a consecutive term of 60 months in prison for the first section 924(c) firearm offense, and consecutive terms of 20 years for each of the other four section 924(c) firearm offenses, for an aggregate

consecutive sentence of 85 years (1,020 months) in prison. [Id.]. This Court[1] sentenced Hughes to 100 months' imprisonment for the robbery and short-barreled shotgun offenses and to an aggregate consecutive term of 1,020 months in prison for the section 924(c) firearm offenses, for a total aggregate sentence of 1,120 months. [Doc. 46: Judgment at 2].

Hughes is now 44 years old and has approximately 294 months of credited time in the Bureau of Prisons.[2] [See Doc. 93-1]. During his term of incarceration, Hughes has received 42 disciplinary citations, including multiple citations for fighting, possessing a dangerous weapon, and stealing. [Id.]. His most recent citation was for fighting in April of 2020. [Id.]. Hughes has completed 104 educational or work programs. [Id.].

Hughes now moves this Court to reduce his term of incarceration to 360 months, followed by a five-year term of supervised release, 12 months of which to be served in home confinement. [Doc. 89 (motion); Doc. 94 at 2, 9 (reply)]. The Government concedes that the Court has the discretion to grant Hughes's motion but opposes granting any relief. [Doc. 93].

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding. Upon Judge Thornburg's retirement, this matter was reassigned to the undersigned.

[2] Hughes's projected release date is April 26, 2080. See https://www.bop.gov/inmateloc/ (last accessed Feb. 3, 2022).

## II. DISCUSSION

### A. Motion to Reduce Sentence

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government asserts that Hughes has not submitted evidence of his request for relief from the warden of his BOP facility. [Doc. 93 at 4]. However, Hughes states in his motion that he asked the warden of his BOP facility for relief, and he submits documentation of his appeals of that request. [Doc. 89 at 6; Doc. 90 at 2-9]. Based upon Hughes's submissions, the Court concludes that Hughes has sufficiently exhausted his administrative rights with the BOP. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by

5

the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

While acknowledging that the Court is authorized to find that Hughes has shown extraordinary and compelling reasons for his release, the Government argues that, "for the sake of consistency," the Court should adhere to the policy statement outlined in § 1B1.13 in evaluating Hughes's request. [Doc. 93 at 7]. The policy statement set forth in § 1B1.13, however, is not binding on this Court. Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, while this policy statement "remains helpful guidance even when motions are filed by defendants," id. at 282 n.7, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).

Here, Hughes relies on a recent change in sentencing law as a basis for his request for compassionate release. Section 403(a) of the First Step Act of 2018 amended 18 U.S.C. § 924(c) to remove the possibility that a defendant will receive "stacked" § 924(c) sentences by requiring that the 25-year[3] mandatory minimum that applies for a second or successive § 924(c) conviction applies only "when a prior § 924(c) conviction arises from a separate case and already has become final." First Step Act of 2018 § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5222. This amendment, however, did not apply retroactively to sentences imposed before December 21, 2018, the effective date of the First Step Act. Id. § 403(b). Therefore, Hughes was not entitled to seek a reduction of his sentence under this provision.

In McCoy, however, the Fourth Circuit recognized that district courts may "consider changes in sentencing law as part of the 'extraordinary and compelling reasons' inquiry." 981 F.3d at 287-88. Specifically, in McCoy, the Fourth Circuit affirmed the district courts' findings that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute

---

[3] The 20-year mandatory consecutive provision applied to Hughes was subsequently amended to 25 years.

an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." Id. at 285. "Nothing in McCoy, however, requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court cautioned that the determination of whether a sentence reduction should be based on a "full consideration of the Defendant's individual circumstances," including the length of time already served, any rehabilitative efforts made while incarcerated, the defendant's prior criminal history, and the defendant's age at the time of the offense. McCoy, 981 F.3d at 286.

Here, Hughes has served approximately 294 months of a 1,120-month sentence. That is a sentence of over 93 years—85 years of which are due to the now-prohibited "stacking" of consecutive 20 (or 25) year sentences per § 924(c). If Hughes were sentenced today on the offenses as charged, he would likely receive a much lighter, though still very lengthy, sentence. He would receive at least five years' imprisonment for each of his § 924 convictions[4]—which, when combined with a 100-month term for the robbery

---

[4] Because Hughes used a short-barrel shotgun, and discharged it in the commission of his crimes, his consecutive sentences likely would have been ten years, rather than five

9

and shotgun offenses, would result in an aggregate sentence of 400 months. In light of the severity of the Defendant's stacked § 924(c) sentences, combined with the enormous disparity between that sentence and the sentence he would likely receive today, the Court concludes that the Defendant has established an "extraordinary and compelling" reason for a sentenced reduction.

Having determined that an extraordinary and compelling reason exists, the Court next considers the § 3553(a) factors, as "applicable," to determine whether a sentence reduction is warranted. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Hughes's criminal history consists of non-violent offenses, and he was only 20 years old when he was arrested for the offenses of conviction. His lack of a serious criminal history and his relative youth at the time of the offenses weigh in favor of his release. Further, as noted above, there is a considerable disparity between the sentence Hughes received for his § 924(c) convictions in 1999 and what he would likely receive today. Thus, granting Hughes compassionate release would not create any unwarranted sentencing disparities.

---

years, if he were so charged. See 18 U.S.C. § 924(c)(1)(A)(iii) and (B). Even though those enhancements were part of the statute at the time of Hughes's offenses, they were not included in his Indictment. [Doc. 1].

10

Admittedly, Hughes's behavior while in prison has been less than stellar. Hughes has received 42 disciplinary citations, including multiple citations for fighting, possessing a dangerous weapon, and stealing. On the other hand, he has completed more than 100 educational or work programs. Additionally, Hughes appears to have significant family support, which will be of great assistance to him in transitioning back into society. On the whole, these factors do not weigh against granting a reduction in sentence.

For all these reasons, the Court concludes that the relevant § 3553(a) factors weigh in favor of granting a reduction of the Defendant's term of imprisonment to a total of 400 months.

## B. Motion to Seal

The Defendant moves the Court for leave to file under permanent seal his Motion to Reduce Sentence, as well as the supporting exhibits. [Doc. 91].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object

to the Defendant's motion. The Defendant filed his motion on October 21, 2021, and such motion has been accessible to the public through the Court's electronic case filing system since that time.

The Defendant, however, has not demonstrated that either his motion or its supporting exhibits contain sensitive information concerning the Defendant or that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information.  See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018).  The Defendant's motion is based primarily based on a change in sentencing law, and the exhibits filed in support of that motion include his proposed release plan; a proffered but unsigned plea agreement; documentation related to his prior criminal history; his educational and work program achievements while in prison; and his disciplinary record.   The Defendant has failed to demonstrate any reason why the public should not have access to these documents.  Accordingly, the Court will deny the motion to seal.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 89] is **GRANTED**, and the Defendant's sentence is hereby **REDUCED** as follows:

(1) The term of 100 months as to each of Counts 1, 3, 5, 7, 9, 10 and 12, with those terms to run concurrently to one another, as set out in the original Judgment [Doc. 46], shall remain undisturbed;

(2) The term of 60 months as to Count 2, to be served consecutively to all other counts, as set out in the original Judgment shall remain undisturbed;

(3) The term of 240 months as to Count 4 in the original Judgment is hereby reduced to 60 months, to be served consecutively to all other counts;

(4) The term of 240 months as to Count 6 in the original Judgment is hereby reduced to 60 months, to be served consecutively to all other counts;

(5) The term of 240 months as to Count 8 in the original Judgment is hereby reduced to 60 months, to be served consecutively to all other counts;

(6) The term of 240 months as to Count 11 in the original Judgment is hereby reduced to 60 months, to be served consecutively to all other counts,

for a total term of incarceration of 400 months. Upon release from imprisonment, the Defendant shall be placed on supervised release for a term of 5 years as to each of Counts 1 through 12, with those terms to run concurrently to one another. All other terms and conditions of the Defendant's original Judgment [Doc. 46] shall remain in full force and effect.

**IT IS FURTHER ORDERED** that the Defendant's "Motion to File Document Under Seal" [Doc. 91] is **DENIED**. The Clerk of Court is respectfully instructed to unseal the exhibits docketed as Document 90.

The Clerk of Court is respectfully instructed to prepare an Amended Judgment in accordance with this Order and to provide copies of this Order to the Defendant, counsel for the Government, the Bureau of Prisons, and the United States Probation Office.

**IT IS SO ORDERED.**

Signed: February 7, 2022

Martin Reidinger
Chief United States District Judge