THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO.1:98-cr-00155-MR-WCM-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **O R D E R** |
| ARANDER MATTHEW HUGHES, JR., | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 98].

**I.     BACKGROUND**

Between July 1997 and April 1998, the Defendant in this matter, 20-year-old Arander Matthew Hughes, Jr., committed the armed robbery of a grocery store, a hotel, a Pizza Hut, and two banks in Asheville, North Carolina. [Doc. 80: PSR at ¶¶ 7, 9-15]. The Defendant carried a double-barrel shotgun during all five robberies; before the bank robberies, the Defendant sawed off the barrel of the shotgun making it less than 18 inches in length and sawed off the stock, creating a pistol grip. [Id. at ¶ 7]. During the first robbery of an Ingles grocery store, the Defendant fired a shot from the shotgun upon entering the store and approached the store manager at

the front desk. [Id. at ¶ 9]. The Defendant waved the shotgun at the manager, the clerk, and customers while stealing money from the manager and from a check-out clerk who had been checking out a customer. [Id.]. During the second robbery, the Defendant carried the shotgun into a Holiday Inn Express and threatened to shoot the hotel clerk in the foot, as the clerk was opening safety deposit boxes and emptying out his pockets. [Id. at ¶ 10]. As the Defendant walked out of the hotel, a hotel guest came out of his room and walked down some stairs toward the lobby. [Id.]. The Defendant turned around and fired a shot in the direction of the guest as he was fleeing. [Id.]. Fortunately, the guest was not injured. [Id.].

The Defendant next robbed a Pizza Hut. During this third robbery, the Defendant carried the shotgun and pointed it at a Pizza Hut employee. [Id. at ¶ 11]. The Defendant was accompanied by an accomplice carrying a .22 caliber rifle. [Id.]. After an employee handed the Defendant the night deposit, the Defendant grabbed the employee by the arm and pushed him, ordering him to open the cash register and give him the money inside. [Id.].

The Defendant's fourth robbery was of a Centura Bank. [Id. at ¶ 13]. During that robbery, he pointed the shotgun at everyone in the bank, while ordering the tellers to fill a backpack with cash. [Id.]. Similarly, during the Defendant's fifth robbery, of a NationsBank, the Defendant pointed his

2

shotgun at tellers, ordering them to put money into his book bag. [Id. at ¶ 14].

A federal grand jury indicted the Defendant and charged him with three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951; two counts of bank robbery, in violation of 18 U.S.C. § 2113(a); two counts of possessing a short-barreled shotgun, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(1); and five counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). [Doc. 1: Indictment]. The Defendant proceeded to trial, and a jury found him guilty of all 12 offenses. [Doc. 26: Jury Verdict].

Prior to sentencing, this Court's probation office submitted a presentence report which calculated a total offense level of 27 for the robbery and short-barreled shotgun offenses. [Doc. 80: PSR at ¶ 80]. When this offense level was combined with a criminal history category of IV, the Sentencing Guidelines called for a sentence of between 100 and 125 months in prison for the robbery and short-barreled firearm offenses. [Id. at ¶ 115]. In addition, the Defendant faced a consecutive term of 60 months in prison for the first section 924(c) firearm offense, and consecutive terms of 20 years for each of the other four section 924(c) firearm offenses, for an aggregate

consecutive sentence of 85 years (1,020 months) in prison. [Id.]. This Court[1] sentenced the Defendant to 100 months' imprisonment for the robbery and short-barreled shotgun offenses and to an aggregate consecutive term of 1,020 months in prison for the section 924(c) firearm offenses, for a total aggregate sentence of 1,120 months. [Doc. 46: Judgment at 2].

In 2021, the Defendant filed a motion for a reduction of his sentence to 360 months' imprisonment, citing his stacked 18 U.S.C. § 924(c) convictions, and arguing that he had committed his offenses when he was 20 years old, that no one was physically injured as a result of his crimes, that his co-defendants received shorter sentences and thus there was an unwarranted sentencing disparity, that he had struggled with alcohol and drugs, that he had taken over 1,700 hours of educational and wellness classes since being incarcerated, and that he had family support and a job offer. [Doc. 89, at 17-20, 22].

In February 2022, this Court granted the Defendant's motion, determining that he had established "an extraordinary and compelling reason" for a sentence reduction based on "the severity" of his stacked § 924(c) sentences, "combined with the enormous disparity between that

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding. Upon Judge Thornburg's retirement, this matter was reassigned to the undersigned.

sentence and the sentence he would likely receive today." [Doc. 95 at 10-11]. The Court also found that the Defendant's "lack of a serious criminal history and his relative youth at the time of the offenses" weighed in favor of compassionate release and that reducing his sentence would not create any unwarranted sentencing disparities. [Id. at 10]. In so doing, the Court described the Defendant's behavior while in prison as "less than stellar," noting that he had 42 disciplinary citations. [Id. at 11]. Nevertheless, in light of the Defendant's completion of more than 100 educational or work programs and his significant family support, the Court held that "[o]n the whole, these factors did not weigh against" reducing his sentence. [Id.]. The Court therefore reduced the Defendant's sentence to a total of 400 months of imprisonment, a 720-month reduction, finding that this was the sentence that the Defendant would likely receive if sentenced today. [Id. at 9-11]. Specifically, the Court reduced the consecutive sentences for four of the Defendant's § 924(c) convictions from 240 months to 60 months. [Id. at 13]. The Court entered its amended judgment on February 9, 2022. [Doc. 96].

    The Defendant is currently housed at USP Pollock, and his projected release date is March 10, 2029.[2]

---

[2] See https://www.bop.gov/inmateloc/ (last accessed May 31, 2023).

In February 2023, the Defendant filed the present motion, his second request for compassionate release. [Doc. 98]. As grounds for relief, he argues that he is now 45 years old and has completed over 75% of his reduced sentence. [Id. at 13]. He again cites his age and non-violent criminal history at the time of the offenses, as well as his family support. [Id. at 13-14, 16]. The Defendant further argues that he is being "denied access" to his family, necessary educational training, and other correctional treatment "in the most effective manner" due to the COVID-19 pandemic. [Id. at 14]. He also cites to the denial of his request to transfer to a medium security prison within 500 miles of Asheville, North Carolina, alleging that other inmates have been allowed to transfer. [Doc. 98-4, at 8; Doc. 98-5 at 2]. Additionally, the Defendant contends that the number of lockdowns at USP Pollock have increased the "punitive effect" of his sentence. [Doc. 98 at 14]. Finally, the Defendant also argues that the 2017 decision in Dean v. United States, 137 S. Ct. 1170 (2017), which allowed courts to take mandatory-minimum sentences into account when imposing a sentence for the predicate offenses, combined with the "harshness" of his sentence "due to COVID-19," are extraordinary and compelling reasons to reduce his sentence. [Id. at 15].

6

The Court ordered the Government to respond to the Defendant's second compassionate release motion. [Text Order entered Mar. 17, 2023]. The Government filed its Response on April 17, 2023. [Doc. 100]. The Defendant filed his Reply on May 26, 2023. [Doc. 101].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, it appears that the Defendant has sufficiently exhausted his administrative rights with the BOP. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must

7

Case 1:98-cr-00155-MR    Document 102    Filed 06/05/23    Page 7 of 13

also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

8

The policy statement set forth in § 1B1.13, however, is not binding on this Court. Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, while this policy statement "remains helpful guidance even when motions are filed by defendants," id. at 282 n.7, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).

Here, the Defendant argues that the Court should further reduce his sentence, beyond the reduction he received in February 2022. In so arguing, the Defendant again relies on his age and non-violent criminal history at the time of the offenses, as well as his family support. [Doc. 98 at 13-14, 16]. This Court already considered those factors when granting his prior motion.

9

[Doc. 95 at 10-11]. These factors, therefore, do not constitute extraordinary and compelling reasons to further reduce the Defendant's sentence now.

The Defendant also argues, relying on Dean v. United States, 137 S. Ct. 1170 (2017), that an additional sentence reduction is warranted because the Court could have considered the mandatory minimum sentences required for his firearm offenses in re-sentencing him for his seven other offenses. Dean, however, was decided in 2017, well before the Court granted the Defendant's first motion for compassionate release. Therefore, the Court already had this option when granting his prior motion. The Court previously determined that a 400-month reduced sentence best served the sentencing factors. [Id. at 11]. Dean does not justify a further reduction of the Defendant's sentence.[3]

The Defendant also contends that the number of lockdowns at his facility and the denial of his request to transfer to a facility with a lower security level and closer to Asheville, North Carolina, have increased the "harshness" of his sentence and deprived him of access to his family and

---

[3] Similarly, the Defendant contends that, if he were sentenced today, he would likely receive a 340-month sentence under a 2003 Department of Justice memorandum setting forth departmental guidance and policy regarding the charging of § 924(c) offenses. [Doc. 98 at 17]. The Court fails to see how a 20-year-old DOJ memorandum constitutes an extraordinary and compelling reason to further reduce the Defendant's sentence.

10

effective treatment and training. [Doc. 98 at 14; Doc. 98-4 at 8; Doc. 98-5 at 2]. In support of this argument, the Defendant submits documents showing a number of lockdowns related to security incidents and concerns, as well as the pandemic, and documents relating to his request for reconsideration of his classification and placement. [Doc. 98-6; Doc. 98-4]. Security lockdowns, however, are an ordinary incident of prison life, and the Defendant has not shown that these lockdowns or any other pandemic-related measures taken by the BOP create an extraordinary and compelling reason to further reduce his sentence.

Further, the BOP's classification of the Defendant and the determination of his facility placement do not constitute extraordinary and compelling circumstances. As for the Defendant's argument that he has been deprived of certain educational programming, the BOP records indicate that he has completed an additional three courses since his prior motion for a sentence reduction, and that he is not currently on any waitlists for such programming. [Doc. 100-2].

The Defendant argues that since his prior motion he has been reclassified as medium custody, has not had any disciplinary infractions, and has participated in the Financial Responsibility Program. [Doc. 98 at 13]. While all of these are positive steps, basic compliance with prison rules and

financial obligations are minimum expectations of incarceration. The Defendant has not met his burden to show any extraordinary and compelling reasons to further reduce his sentence.

For all these reasons, the Court concludes none of the grounds cited by the Defendant, considered either singly or in combination, constitute extraordinary and compelling reasons for a further reduction of his sentence.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the nature and circumstances of the Defendant's offenses were extremely serious. He threatened people with a shotgun on five different occasions, robbing both commercial establishments and banks. He also has earned 42 disciplinary infractions while in prison, including most recently an April 2020 citation for fighting. [See Doc. 93-1]. The Defendant has not shown any marked change or improvement in his history or characteristics since the filing of his first motion for a reduction of sentence two years ago. The Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just

12

punishment, afford adequate deterrence and protect the public from further crimes of the Defendant continue to support the Defendant's reduced sentence of 400 months. Accordingly, the Defendant's second motion for compassionate release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 98] is **DENIED**.

**IT IS SO ORDERED.**

Signed: June 2, 2023

Martin Reidinger
Chief United States District Judge